# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MARATHON E.G. HOLDING LIMITED and MARATHON E.G. PRODUCTION LIMITED,<br>    Plaintiffs, | §<br>§<br>§<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:07-CV-02990 |
| CMS ENTERPRISES COMPANY,<br>    Defendant. | §<br>§<br>§<br>§ | |

## MEMORANDUM AND ORDER

In this contract dispute, Defendant CMS Enterprises Company ("CMS") has filed a Motion for Partial Summary Judgment ("MPSJ") [Doc. # 16].[1] Plaintiffs Marathon E.G. Holding Limited and Marathon E.G. Production Limited (collectively, "Marathon") have responded [Doc. # 18] and CMS has replied [Doc. #19]. Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that CMS's Motion for Partial Summary Judgment should be **denied**.

## I.   BACKGROUND

---

[1] CMS's Motion addresses only the $2,750,000 claim for indemnification brought by Marathon. Marathon also brings a $184,394.10 claim for withholding taxes that Marathon E.G. Production Ltd. paid for December 2001. Defendant has not moved for summary judgment on this additional claim.

The claim before the Court on summary judgment is based upon a $2.75 million payment for corporate income taxes paid by Plaintiff Marathon to the Republic of Equatorial Guinea ("EG").  Plaintiff argues that under a contract between the parties, the Stock Purchase Agreement ("SPA"),[2] Defendant is required to indemnify Plaintiff for the payment because it is "attributable to" tax years 1997-2001.  Defendant counters that the $2.75 million paid by Plaintiff to EG, based on a 2007 settlement with the EG government, are not taxes "attributable to" earlier tax years, and therefore are not included in the SPA's indemnification provision.

The SPA, executed in 2001, governed the sale of properties in EG by CMS Oil and Gas Company[3] to Marathon E.G. Holding Limited.[4]  The subject properties consisted of oil and gas reserves, a liquefied petroleum gas plant, and a methanol plant.[5]  By the SPA's terms, Marathon E.G. Holding Limited purchased all of the issued and outstanding shares of three Cayman Island companies that actually held title to the subject properties: CMS Oil and Gas (Alba) LDC; CMS Oil and Gas (E.G.)

---

[2] Stock Purchase Agreement ("SPA") (Exhibit 1 to Response).

[3] CMS Oil and Gas Company is a subsidiary of Defendant CMS.

[4] Marathon E.G. Holding Limited is a Plaintiff in this suit.

[5] Affidavit of Mike Boyd (Exhibit 3 to Response), at 2, ¶ 3.  Defendant has objected to certain paragraphs of the Boyd Affidavit.  *See* Objections to the Affidavit of Mike Boyd Submitted in Support of Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment [Doc. # 20].  The Court does not rely in this Memorandum on any paragraphs to which Defendant objects, and thus the objections are denied as moot.

LDC; and CMS Oil and Gas (E.G.) LTD (collectively, "Companies").[6]  The SPA was dated October 31, 2001, and had a closing date of January 3, 2002.

Key background facts to this dispute are that, during the period 1997-2001, CMS Oil and Gas Company ("CMS Oil and Gas") had incurred large net operating losses ("NOL"), and claimed the NOL on corporate tax returns filed with the EG government.[7]  The EG authorities had regularly audited CMS Oil and Gas's tax returns and had challenged aspects of the returns.[8]  As of December 31, 2000, months before the SPA was negotiated and executed, one of the Companies, CMS Oil and Gas (EG) LTD, showed on its financial information a NOL of $22,000,000.[9]  There is no dispute that the parties to the SPA were aware of this NOL during drafting of the SPA, and the NOL was considered when tax indemnification was negotiated.[10]  The final version of the SPA contained a provision regarding indemnification for tax liability,

---

[6]   SPA (Exhibit 1 to Response), at 1.  Plaintiff states, without citation to a specific provision, that the SPA also provided that Defendant CMS Enterprises is a guarantor of CMS Oil and Gas Company's obligations under the contract.  Response, at 8.

[7]   Agreement for Final Settlement of All Outstanding Audit Claims & Assessments for the Audit Period 1997-2001, dated May 3, 2007 (Exhibit 8 to Response) ("Settlement Agreement"); Declaration of Earl Poleski (Appendix 1-1 to MPSJ), ¶ 2; Declaration of William H. Stephens (Appendix 3-1 to MPSJ), at 3-2, ¶ 5.

[8]   Stephens Declaration (Appendix 3-1 to MPSJ), at 3-2, ¶ 6.

[9]   Boyd Affidavit (Exhibit 3 to Response), at 3, ¶ 5.

[10]   *Id.*; Declaration of Theodore J. Vogel (Appendix 1-23 to MPSJ), at 2, ¶ 4.

which both parties argue controls the outcome of their current dispute:

> 7.03   Indemnification by Seller. Seller hereby agrees to protect, defend, indemnify and hold harmless the Buyer Indemnified Parties, the Companies and the Alba Companies from and against, and agrees to pay (a) any Taxes (net of any realized Tax benefits associated therewith) of the Companies or the Alba Companies (but only in an amount proportional to Seller's direct or indirect interest in the relevant Alba Company for the period to which such Taxes relate) ***attributable to the time period prior to January 1, 2002*** (including, for the avoidance of doubt, any Taxes of the Companies or the Alba Companies for the period prior to January 1, 2002 that are set forth on Schedule 4.14) but only to the extent such Taxes exceed the amount reserved for Taxes on the Settlement Statement . . . .[11]

After January 3, 2002, when Marathon became the owner of the EG assets sold pursuant to the SPA, Marathon took over negotiations with the EG government regarding tax liability. In accordance with Section 7.05 of the SPA, Marathon coordinated responses to EG's tax audit reports; Marathon and CMS communicated extensively about the response to the audits; and CMS approved, in writing and in advance, each offer made by Marathon to the EG government.[12] In May 2007, after years of negotiations, Marathon and the EG government executed an agreement resolving all tax issues for the period 1997-2001.[13] The agreement provided that, in

---

[11]   SPA (Exhibit 1 to Response), at 31 (emphasis added). Under the SPA, the definition of "Buyer Indemnified Parties" includes "Buyer," or Marathon E.G. Holding, Ltd. *Id*. at 3.

[12]   Boyd Affidavit (Exhibit 3 to Response), at 9, ¶ 15; *see* SPA (Exhibit 1 to Response) § 7.05.

[13]   Boyd Affidavit (Exhibit 3 to Response), at 9, ¶ 15; Agreement for Final Settlement of All
(continued...)

final settlement for all tax claims for the years 1997-2001, Marathon would reduce its

NOL by $11 million, resulting in additional tax liability of $2.75 million:

> (b)   In settlement of all claims contained in the Tax Audits for 1997, 1998, 1999, 2000 and 2001, Marathon will reduce its December 31, 2001 tax loss carry forward position by USD $11,000,000.
>
> \*   \*   \*
>
> (d)   As a result of this settlement Agreement, the cumulative Tax Loss Position of Marathon E.G. Production Ltd. at December 31, 2001 will be reduced by USD $11,000,000 to USD $18,413,997.  This Tax Loss position reduction will result in additional taxes paid to the State of USD $2,750,000.[14]

The Settlement Agreement further states:

> Upon receipt of final settlement amounts and execution of this Agreement, all audit POC and Fiscal claims and Tax Assessments from 1997 to 2001 shall be considered closed and final and not subject to future audit.[15]

Marathon paid the EG government $2.75 million, as required by the Settlement Agreement, and thereafter made a written demand to Defendant for indemnification.[16] Defendant refused the request, claiming that the SPA's indemnity clause does not

---

[13]   (...continued)
Outstanding Audit Claims & Assessments for the Audit Period 1997-2001 (Exhibit 8 to Response) ("Settlement Agreement").

[14]   Settlement Agreement, at 1, ¶¶ 2(b), 2(d).

[15]   *Id.* at 2, ¶ 4.

[16]   Letter from M. Boyd to T. Vogel, dated May 17, 2007 (Exhibit 10 to Response).

apply to Marathon's payment because the payment "is for taxes Marathon paid EG for tax years occurring after the closing of the sale from CMS to Marathon," and "CMS did not indemnify Marathon for tax liability for post-closing tax years."[17] Plaintiff Marathon E.G. Holding Limited then sued CMS in state court for breach of contract. CMS removed the action to this Court on September 17, 2007. Plaintiffs' Amended Complaint, filed on February 1, 2008, added Plaintiff Marathon E.G. Production Limited.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *de la O v. Housing Auth.*, 417 F.3d 495, 501 (5th Cir. 2005). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. Rule 56(e). The court construes all facts and considers all evidence in the light most favorable to the nonmoving party.

---

[17] Letter from T. Vogel to M. Boyd, dated June 15, 2007 (Exhibit 11 to Response).

*Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 416 (5th Cir. 2006).

**III.   ANALYSIS**

    **A.   Standards of Contract Interpretation**

Under Texas law, a court construing a contract is to ascertain the parties' true intent. *Gonzales v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The intention of the parties is to be gathered from the instrument as a whole, and each provision should be given effect. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

Whether a contract is ambiguous is a question of law for the court. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Gonzales*, 394 F.3d at 392. A court may not vary the terms of an unambiguous contract, which are to be given their plain and ordinary meaning. *DeWitt Cty. Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). Unambiguous contracts do not present a fact question, and should be interpreted by the court as a matter of law. *Sw. Bell Tel., L.P. v. Pub. Util. Comm'n of Texas*, 467 F.3d 418, 422 (5th Cir. 2006); *Gonzales,* 394 F.3d at 392; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995

S.W.2d 647, 650-51 (Tex. 1999).

Contractual language is ambiguous when it is "subject to two or more reasonable interpretations or meanings." *Gonzales*, 394 F.3d at 392. This ambiguity creates a fact question regarding the parties' intent. *Sw. Bell*, 467 F.3d at 422. However, a contract is not ambiguous merely because the parties disagree as to interpretations of its terms. *Gonzales*, 394 F.3d at 392. The Court may not consider parol evidence for the purpose of creating an ambiguity, but only where a contract is first determined to be ambiguous. *Nat'l Union Fire Ins.*, 907 S.W.2d at 520.

### B.     Plain Language of Section 7.03(a)

The parties agree that Section 7.03(a) of the SPA controls this case and, of course, each side argues that the section's language works in its favor. As recited above, Section 7.03(a) provides indemnification by Defendant for "any Taxes . . . attributable to the time period prior to January 1, 2002." Furthermore, the previously cited Settlement Agreement, by its caption and text, refers explicitly to tax years 1997-2001.[18]

---

[18]    Settlement Agreement (Exhibit 8 to Response). Paragraph 2(b), for example, states, "In settlement of all claims contained in the Tax Audits for 1997, 1998, 1999, 2000 and 2001, Marathon will reduce its December 31, 2001 tax loss carry forward position by USD $11,000,000."

(continued...)

Plaintiff argues that the $2.75 million payment is "attributable to" tax years 1997-2001, citing a Merriam-Webster definition of *attributable* as "capable of being attributed" and of *attribute* as "to explain as caused or brought about by: regard as occurring in consequence of or on account of."[19]  Defendant cites to another dictionary, defining *attribute* as "to regard as produced by or originating in the time, period, place, etc., indicated; credit; assign."[20]

Both dictionary definitions appear to support Plaintiff's argument that the $2.75 million payment is "attributable to" the period 1997-2001, because the Settlement Agreement establishes that the payment was "caused by" or "originated in" those years.  As Plaintiff notes,[21] the parties chose "attributable to," which is broad language that allows for later tax payments made because of obligations from earlier time periods.  Moreover, at the beginning of Section 7.03(a), the parties chose the broad language "*any* Taxes," without qualifying Defendant's obligation based on when the tax payment was made.

---

[18]   (...continued)
Defendant characterizes the $2.75 million payment as "paid for tax years 2005," but cites nothing supporting its statement.  MPSJ, at 9.

[19]   Response, at 24; Definitions of *Attribute* and *Attributable* from Webster's Third New Int'l Dictionary, Unabridged, Merriam-Webster 2002 (Exhibit 12 to Response).

[20]   Reply, at 5; Photocopied Definition of *Attribute* from Unidentified Dictionary (Appendix 1-13 to Reply).

[21]   Response, at 5.

Based on the foregoing analysis, Section 7.03(a) is subject to only one reasonable reading—that Defendant is obligated to indemnify Plaintiff for its $2.75 million tax payment attributable to tax years 1997-2001.[22] This conclusion renders

---

[22] Defendant also argues that Plaintiffs' reading of Section 703(a) is impermissible because it would render Section 703(c) superfluous. MPSJ, at 8; Reply, at 13. *See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.")). Section 7.03(c) provides:

> 7.03   <u>Indemnification by Seller</u>.  Seller hereby agrees to protect, defend, indemnify and hold harmless the Buyer Indemnified Parties, the Companies and the Alba Companies from and against, and agrees to pay . . . *(c) any increase in Taxes of a Buyer Indemnified Party resulting from a breach by Seller of its representation in Section 4.14(j) or its covenant in Section 6.02(d)* . . .

SPA (Exhibit 1 to Response), at 31 (emphasis added). Defendant argues that the "logical implication" of this provision, which limits indemnity to two specific breaches by Seller, is that an indemnity obligation does not arise from increased taxes due to any breach other than the two specifically identified in Section 703(c). MPSJ, at 11-12.

Defendant's argument fails for two reasons. First, Sections 703(a) and 703(c) indemnify different parties. Section 7.03(a) pertains only to taxes of the "Companies" and the "Alba Companies." Under the SPA, "Companies" includes CMS Oil and Gas (EG) LTD, the company purchased by Marathon by the SPA that had the $22 million NOL relevant to the dispute at bar. *See* SPA (Exhibit 1 to Response), at 1. In contrast, Section 703(c) covers only increased taxes of the "Buyer Indemnified Parties." The Buyer Indemnified Parties indemnified by Section 703(c) cannot possibly be impacted by Section 7.03(a), because "Buyer Indemnified Parties" is defined by the SPA as "Buyer, its Affiliates and their respective directors, officers, employees, agents and representatives," *id*. at 3, and the SPA's definition of "Affiliate" specifically excludes "[t]he Companies and the Alba Companies." *Id*. at 1-2.

Second, Section 7.03(c) does not provide indemnity for EG taxes, such as those covered by Section 7.03(a), but only for U.S. taxes. Section 7.03(c) specifically indemnifies against increased taxes related to (1) SPA Section 4.14(j), which pertains to Internal Revenue Service forms and U.S. Treasury Regulations, and (2) SPA Section 6.02(d), which pertains
(continued...)

the contractual language unambiguous, making its interpretation a question of law for this Court to decide.[23]

Defendant has failed to demonstrate that it is entitled to judgment as a matter of law in its favor, FED. R. CIV. P. 56(c), and its motion is denied.

However, because the contractual language appears to be unambiguous and dispositive of Plaintiffs' claim, it would be inappropriate for the Court to reach the parties' other arguments regarding contract interpretation,[24] and the Court declines to do so at this time.

## IV. CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. # 16] is **DENIED**. It is further

**ORDERED** that the parties are directed to show cause (as described hereafter) why Plaintiffs are not entitled to summary judgment on their claim under the SPA for

---

[22] (...continued)
to U.S. income taxes. SPA (Exhibit 1 to Response), at 20, 25.

[23] *See Gonzales*, 394 F.3d at 392 ("'In the context of contract interpretation, **only** when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment.'" (quoting *Amoco Prod. Co. v. Texas Meridian Res. Exploration, Inc.*, 180 F.3d 664, 669 (5th Cir. 1999) (emphasis added)).

[24] The parties' briefing raises additional issues, such as the parties' conduct during negotiations and application of the maxim *expressio unius est exclusio alterius*.

indemnification of the $2.75 million payment, based on the plain language of Section 7.03(a). Plaintiffs are directed to file any motions and supporting briefs on or before **Wednesday, May 21, 2008**. Defendant may file a response on or before **Wednesday, May 28, 2008.**

SIGNED at Houston, Texas, this **8th** day of **May, 2008**.

_____
Nancy F. Atlas
United States District Judge