IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARATHON E.G. HOLDING LIMITED and MARATHON E.G. PRODUCTION LIMITED,<br>Plaintiffs,<br><br>v.<br><br>CMS ENTERPRISES COMPANY,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:07-CV-02990 |

## MEMORANDUM AND ORDER

In this tax indemnification case, Plaintiffs Marathon E.G. Holding Ltd. and Marathon E.G. Production Ltd. (collectively, "Marathon") brought two claims against Defendant CMS Enterprises Company ("CMS"): a claim for indemnification of a $2.75 million tax payment, and a claim for indemnification of a $184,394.10 withholding tax payment. On July 30, 2008, the Court granted summary judgment in favor of CMS on the claim for indemnification of the $2.75 million tax payment.[1]

The parties now have filed cross-motions for summary judgment on Plaintiffs' remaining claim for reimbursement of the $184,394.10 withholding tax payment. On August 21, 2008, CMS filed a Motion for Summary Judgment on Withholding Claim [Doc. # 39] ("Defendant's Motion"), contending that Marathon's claim is time-barred

---

[1]   Memorandum and Order [Doc. # 36].

under the parties' Stock Purchase Agreement ("SPA") and arguing, by inference, that Marathon's claim is barred by the applicable statute of limitations.[2] Marathon has responded, and CMS has replied.[3] One day later, Plaintiffs filed a Second Motion for Partial Summary Judgment [Doc. # 42] ("Plaintiffs' Motion"), to which Defendant responded and Plaintiffs replied.[4]

These motions are now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendant's Motion should be **granted** and Plaintiffs' Motion should be **denied**.

## I.  BACKGROUND

In late 2001 the parties executed the SPA, by whose terms CMS sold to Marathon certain properties in the Republic of Equatorial Guinea ("EG"), including oil and gas reserves, a liquified petroleum gas plant, and a methanol plant. The sale closed on January 3, 2002. On or about January 15, 2002, Marathon made a

---

[2]  *See* Defendant's Reply, at 5-6. The Court will permit CMS to amend its motion to make this argument, because the argument was implied in Defendant's motion.

[3]  Plaintiffs' Response to the Defendant's Motion for Summary Judgment on Withholding Claim [Doc. # 43] ("Plaintiffs' Response"); CMS's Reply in Support of Motion for Summary Judgment on Withholding Claim [Doc. # 45] ("Defendant's Reply"). Along with Defendant's Motion, CMS filed a Notice of Intention to Rely upon Foreign Law [Doc. # 40], stating that it will cite to the law of Equatorial Guinea ("EG") regarding the statute of limitations and the due date for withholding taxes.

[4]  Defendant's Response to Plaintiffs' Second Motion for Partial Summary Judgment [Doc. # 44] ("Defendant's Response"); Plaintiffs' Reply in Support of Their Second Motion for Partial Summary Judgment [Doc. # 46] ("Plaintiffs' Reply").

withholding payment to the EG government in the amount of $245,825.39.[5] This payment was for December 2001, the month immediately preceding the closing of the sale under the SPA. Marathon later demanded indemnification from CMS under the SPA for the January 2002 tax payment. In the current lawsuit, the parties dispute whether Marathon's indemnification claim is time-barred.

Section 7.03 of the SPA, which pertains to indemnification for taxes, refers to the statute of limitations but does not specify the source of the applicable limitations period:

> 7.03   Indemnification by Seller.  Seller [CMS] hereby agrees to protect, defend, indemnify and hold harmless the Buyer Indemnified Parties [including Marathon], the Companies and the Alba Companies from and against, and agrees to pay (a) any Taxes . . . of the Companies or the Alba Companies . . . attributable to the time period prior to January 1, 2002 . . . but only to the extent such Taxes exceed the amount reserved for Taxes on the Settlement Statement. . . . ***[N]o claim for Taxes shall be permitted under this Section 7.03 unless such claim is first made before the expiration of the statute of limitations (including applicable extensions) for the taxable period to which the claim relates or if no such statute of limitations exists, prior to the date on which such claim is otherwise barred by law***.[6]

The limitations period applicable to the dispute at bar is either four or five years. The parties cite the Court to two Texas statutes: the four-year limitations period for actions

---

[5]   Affidavit of Mike Boyd (Exhibit 2 to Plaintiffs' Response), at 2, ¶ 5.

[6]   Stock Purchase Agreement (Exhibit 1 to Plaintiffs' Motion) ("SPA"), § 7.03, at 31 (emphasis added).

for debt,[7] and the four-year limitations period for breach of contract actions.[8]  CMS also cites to a five-year limitations period for tax collection claims under EG law.[9]  The SPA itself states that it is to be "construed and enforced in accordance with [] the laws of the State of Texas."[10]  Because the Court holds *infra* that Marathon's claim is barred under any of these three limitations periods, the Court need not decide which statute governs.

At some point after the 2002 payment, Marathon's accounting department determined that CMS had under-accrued the withholding taxes for December 2001.  On January 21, 2005, approximately three years after the withholding payment, Mike Boyd of Marathon sent a letter to CMS requesting indemnification.[11]  The Boyd Letter stated in part:

> CMS accrued December withholding taxes of $61,431.29 in December of 2001 and Marathon paid December withholding taxes of $245,825.39 in January of 2002 for a difference of $184,394.10. . . .
>
> . . . . [P]lease consider this letter a request for full indemnification and

---

[7]  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3).

[8]  TEX. CIV. PRAC. & REM. CODE § 16.051.

[9]  Notice of Intention to Rely upon Foreign Law [Doc. # 40], at 2, ¶ 4 (citing Article 219 of the EG Tax Law of 1986).

[10]  SPA, § 11.05, at 43.

[11]  Letter from M. Boyd (Marathon) to J. Silverman (CMS), dated January 21, 2005 (Exhibit 3 to Plaintiffs' Motion) ("Boyd Letter").

payment pursuant to §7.03 of the [SPA].[12]

The Boyd Letter is at the center of the parties' disagreement. Marathon argues that the letter was a "claim" under Section 7.03, and was made within the limitations period, thereby satisfying Section 7.03's requirement that a claim be "first made before expiration of the statute of limitations." CMS, however, maintains that the letter was merely a notice of a claim, that only a document initiating a lawsuit could suffice as a "claim" as the term is used in Section 7.03, and that the Boyd Letter did not satisfy the statute of limitations.

On October 3, 2006, more than a year and a half after the Boyd Letter,[13] CMS formally denied Marathon's demand for indemnification.[14]

---

[12]   *Id*.

[13]   In the interim, the parties had exchanged multiple emails. *See* Email from E. Poleski (CMS) to M. Boyd (Marathon), Jan. 27, 2005 (Exhibit 4 to Plaintiffs' Motion) (CMS acknowledges receipt of the Boyd Letter and is reviewing the request for indemnification); Email from E. Poleski (CMS) to M. Boyd (Marathon), Aug. 23, 2005 (Exhibit 5 to Plaintiffs' Motion) (CMS has received additional information and is reviewing Marathon's claim); Email from M. Boyd (Marathon) to E. Poleski (CMS), June 16, 2006 (Exhibit 6 to Plaintiffs' Motion) (following up on request for indemnification and attaching messages from Marathon's accounting department responding to questions from CMS); Email from E. Poleski (CMS) to M. Boyd (Marathon), June 22, 2006 (Exhibit 7 to Plaintiffs' Motion) (Poleski responds to Marathon's follow-up inquiry by stating he would "push . . . forward" the request for indemnification).

[14]   Letter from J. Silverman (CMS) to M. Boyd (Marathon), dated Oct. 3, 2006 (Exhibit 8 to Plaintiffs' Motion) ("Denial Letter"). The Denial Letter provided two reasons for the decision:

> We respectfully submit that this claim is in the nature of a working capital
(continued...)

On August 15, 2007, Marathon initiated the instant lawsuit.[15] The lawsuit therefore was filed within eleven months of CMS's Denial Letter on October 3, 2006; approximately two and a half years after the Boyd Letter on January 21, 2005; and, most significantly, more than five and a half years after the withholding payment on January 15, 2002.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the

---

[14] (...continued)
adjustment. Such claims are governed by § 2.05 of the SPA which requires generally that the parties agree to working capital adjustments within 120 days of closing. We submit that the information necessary to make a working capital adjustment within the required period was available to Marathon, and that CMS and Marathon came to agreement on working capital items within the required time.

We further submit, with respect, that the proposed adjustment is not in the nature of a Tax but rather a simple account payable of amounts withheld from vendors.

Given the passage of time between the closing and Marathon's letter of January 21, 2005, we must respectfully decline to accept Marathon's proposed working capital adjustment.

*Id.*

[15] *See* Notice of Removal [Doc. # 1] (removing case from 270th Judicial District Court of Harris County, Texas, and attaching Plaintiffs' original state court petition, filed on Aug. 15, 2007).

party's case, and on which that party will bear the burden at trial.[16] Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[17]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[18] The moving party, however, need not negate the elements of the non-movant's case.[19] The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[20]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[21] "An issue is material if its resolution could affect the outcome of the

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[17] FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[18] *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[19] *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[20] *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[21] *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation (continued...)

action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[23] However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[24] The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[25] Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[26] Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[27] In the absence of any proof,

---

[21] (...continued) omitted).

[22] *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[23] *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[24] *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[25] *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[26] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[27] *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

the court will not assume that the non-movant could or would prove the necessary facts.[28]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[29] A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[30]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[31]

## III. ANALYSIS

CMS argues that Marathon's indemnity claim accrued in January 2002, when Marathon paid the withholding tax, that Texas' four-year limitations period expired in January 2006, and that this lawsuit is time-barred. Marathon argues that the Boyd

---

[28] *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[29] *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[30] *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[31] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

Letter was a "claim for Taxes" under Section 7.03 and that, because that claim was "first made" when Marathon sent the letter within four years of the payment, the claim is permitted under Section 7.03. Marathon further argues that its claim did not accrue until October 2006 when CMS issued the Denial Letter formally responding to the Boyd Letter and refusing to indemnify Marathon, and therefore that this lawsuit, filed in 2007, was timely.

Indemnity contracts are construed according to general contract principles, giving meaning to each of a contract's provisions.[32] A court's primary purpose when construing a contract is to "ascertain and give effect to the parties' intentions as expressed in the document."[33] A court must "ascertain the meaning that would be attached to the wording 'by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended to mean.'"[34] Determining whether a contract is ambiguous, and

---

[32] *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991).

[33] *Frost Nat'l Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005).

[34] *Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982) (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)). *Accord City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968) (quoting RESTATEMENT OF THE LAW OF CONTRACTS § 230 (1932)).

interpreting an unambiguous contract, are questions of law.[35]

### A.      Definition of "Claim"

The parties dispute the meaning of "claim" under Section 7.03. Marathon argues that the Boyd Letter on January 21, 2005, requesting indemnification for $184,394.10 in withholding taxes, was a "claim" sufficient to satisfy Section 7.03. Under Texas law, contractual terms are generally to be given their plain, ordinary, and commonly accepted meaning.[36] Marathon cites to Webster's Third New International Dictionary, which defines "claim" as "an authoritative or challenging request: Demand" or "a calling on another for something due or supposed to be due."[37] Marathon also argues that, if "claim" means "lawsuit," then the word "first" in "first made" is rendered surplusage, and that in common usage a suit is "filed," not made.[38]

CMS argues that, although in some contexts a "claim" can be a notice or demand, in the context of Section 7.03 the Boyd Letter did not suffice as a "claim." In support, CMS makes two arguments. First, the SPA distinguishes between a claim

---

[35]   *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

[36]   *See, e.g.*, *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990).

[37]   Plaintiffs' Response, at 12 (citing Appendix 10 to Plaintiffs' Response (definition of "claim" printed from http://unabridged.merriam-webster.com)).

[38]   Plaintiffs' Reply, at 7; *see* SPA, § 7.03 ("no claim for Taxes shall be permitted . . . unless such claim is first made before the expiration of the statute of limitations").

and notice of a claim.  In Section 10.01(b)(ii), the SPA defines "Claim Notice" as "a written notice of claim specifying in reasonable detail the specific nature of and specific basis of the Losses and the estimated amount of such Indemnified Losses."[39] CMS argues that, if the parties had meant to require only a "Claim Notice" in Section 7.03, and not a "claim," they could easily have done so.[40]

Second, CMS points out that the word "claim" is used four times in Section 7.03 and, if the term is interpreted to mean "demand," as urged by Marathon, then the section is rendered nonsensical:

> [N]o **demand** for Taxes shall be permitted under this Section 7.03 unless such **demand** is first made before the expiration of the statute of limitations (including applicable extensions) for the taxable period to which the **demand** relates or if no such statute of limitations exists, prior to the date on which such **demand** is otherwise barred by law.

Only a claim in a legal pleading, and not a "demand" or a "claim notice," can be "barred by law" as stated in Section 7.03's final phrase.  By contrast, if "claim" is defined as "lawsuit," the provision reads logically throughout:

> [N]o **lawsuit** for Taxes shall be permitted under this Section 7.03 unless

---

[39] SPA, Section 10.01(b)(ii), at 37.  Marathon argues that Article X, which contains Section 10.01(b)(ii), does not apply to tax claims under Article VII of the SPA.  Plaintiffs' Response, at 6.  CMS, however, is not urging that the Court apply Article X to Marathon's tax claim.  Defendant's Reply, at 2 n. 2.  The Court considers Section 10.01(b)(ii) only to compare its contractual language with the language selected by the parties in Section 7.03, in order to discern the parties' intentions in the SPA.

[40] Defendant's Response, at 10 (citing *Gonzalez*, 795 S.W.2d at 736-37).

> such **lawsuit** is first made before the expiration of the statute of limitations (including applicable extensions) for the taxable period to which the **lawsuit** relates or if no such statute of limitations exists, prior to the date on which such **lawsuit** is otherwise barred by law.

The Texas Supreme Court has held that "words used in one sense in one part of a contract are, as a general rule, deemed to have been used in the same sense in another part of the instrument."[41] When "claim" is defined as "lawsuit," as CMS urges, the Court need not ascribe different meanings to the term "claim" in the same sentence.

The Court therefore is inclined to agree with CMS's position that the parties intended the term "claim" in Section 7.03 to mean "lawsuit." The Court does not decide the issue, however, because the issue is not free from doubt and thus may present a fact issue. Ultimately, this issue is not material, as it does not affect disposition of the dispute at bar. As discussed in the next section, even if Marathon were correct that the Boyd Letter is a "claim" under Section 7.03, such a "claim" would be insufficient to toll the statute of limitations.

### B. Accrual

The dispositive issue regarding Marathon's indemnity claim is when the claim accrued. When determining the correct accrual date for an indemnity claim, Texas

---

[41] *Gonzalez*, 795 S.W.2d at 736-37.

courts look to the contract's indemnity provision.[42]  All indemnity provisions fall into one of two categories: (1) indemnification against liability, under which an indemnitee's right to sue does not accrue until liability becomes "fixed and certain" as by rendition of a judgment, whether or not the indemnitee has suffered actual damage by payment ("liability indemnity"); and (2) indemnification against damages, under which an indemnitee's right to sue accrues when "'the indemnitee has suffered damage or injury by being compelled to pay the judgment or debt'" ("damages indemnity").[43]

Marathon's claim, which seeks indemnification for its payment of EG taxes that CMS should have paid before sale, falls within in the second *Smith* category.  Section 7.03 states that "Seller [CMS] hereby agrees to protect, defend, indemnify and hold harmless the Buyer Indemnified Parties [including Marathon] . . . from and against, and agrees to pay any ***Taxes*** . . . of the Companies or the Alba Companies . . .

---

[42]  *Smith Int'l, Inc. v. The Egle Group*, 490 F.3d 380, 388 (5th Cir. 2007) (citing *Ingersoll-Rand Co. v. Valero*, 997 S.W.2d 203, 207 (Tex. 1999)).  The Fifth Circuit stated:

> In contrast to breach of contract and negligence claims, Texas courts do not apply the legal injury rule to indemnity claims.  Instead, as explained by the Supreme Court of Texas, to determine the correct accrual date of an indemnity claim we look to the contract's indemnity provision.

*Id*.  (internal citations, quotation marks, and alterations omitted).

[43]  *Smith*, 490 F.3d at 389 (quoting *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App. – El Paso, 1993)).

attributable to the time period prior to January 1, 2002."[44]  Marathon's claim for indemnity is based on the "debt" it incurred when it was compelled to pay taxes to the EG government, *i.e.*, the withholding taxes it was obligated to pay in January 2002, because CMS had failed to pay all EG taxes due for 2001.  Although Marathon's payment of the taxes was not preceded or mandated by a judgment, as described in *Smith* for "liability indemnity,"[45] CMS does not dispute that Marathon was obligated to make the payment to the EG government on January 15, 2002, the last day they were due by EG law.[46]

> Where the obligation of indemnity is against damages or injury, the right to indemnification arises when the indemnitee suffers actual loss by being compelled to pay.[47]

---

[44]  SPA, § 7.03(a), at 31 (emphasis added).

[45]  *Smith* states, "Accordingly, under Texas law, the *earliest* possible accrual date for an indemnity agreement is the day that judgment is entered against the indemnitee. . . . In contrast, the cause of action for a damage indemnity agreement does not accrue until even *later*, that is, when the indemnitee is 'compelled to pay the judgment or debt.'"  *Smith*, 490 F.3d at 389 (emphasis original).  The circumstances here are different from those in *Smith* in that the tax payment clearly was due before any lawsuit was filed.  Thus, the Court is not bound by the word "later" in *Smith*'s ruling.

[46]  CMS agrees that the withholding payment was due on January 15, 2002.  Defendant's Response at 3-4 (the "undisputed facts" establish that January 15, 2002, was the due date for December 2001 withholding taxes under EG law, and that Marathon paid the withholding tax on that date)).

[47]  *Holland v. Fidelity & Deposit Co. of Md.*, 623 S.W.2d 469, 470 (Tex. App. – Corpus Christi 1981, no writ) (citing *Russell v. Lemons*, 205 S.W.2d 629 (Tex. Civ. App. – Amarillo 1947, writ ref'd n.r.e.); *Texas Auto Servs., Inc. v. Kemp*, 478 S.W.2d 646 (Tex. Civ. App. – Austin 1972, no writ); *Bernard v. L.S.S. Corp.*, 532 S.W.2d 409 (Tex. Civ. App. – Austin 1976, writ
(continued...)

Marathon clearly was "compelled to pay" the taxes due to the EG government in January 2002, the debt clearly was due at that time, and Marathon at that point suffered "actual loss."[48] These events triggered "damages indemnity" under the parties' contract and thus establish that Marathon's claim against CMS accrued on January 15, 2002.

Marathon cites to the legal injury rule—a Texas doctrine which, as *Smith* makes clear, is not properly applied in the indemnity context.[49] However, even if the legal injury doctrine were applied, Marathon would not prevail. Under the legal injury rule, a claim accrues when the facts supporting the claim come into existence.[50] In the case

---

[47] (...continued)
ref'd n.r.e.)). In *Holland*, Fidelity & Deposit Company had executed certain performance bonds on behalf of three defendants, and the defendants in turn agreed to indemnify Fidelity for any losses sustained regarding the bonds. One defendant subsequently defaulted on performance of its contracts and, as a result, Fidelity was obligated to make payment under the performance bond. The Court of Appeals held that damages indemnity applied, rather than liability indemnity, and that Fidelity's cause of action "accrued [when] payment [was made] on the first bond." *Id.* at 471.

[48] *See Smith*, 490 F.3d at 389; *Tubb*, 862 S.W.2d at 750; *Holland*, 623 S.W.2d at 470.

[49] *Smith*, 490 F.3d at 388 ("Texas courts do not apply the legal injury rule to indemnity claims").

[50] Marathon cites the Court to non-indemnity cases which recite this rule, which is generally applicable to breach of contract or negligence claims. *See Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998) (court reaffirms rule that "[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy"); *Stevens v. State Farm Fire and Casualty Co.*, 929 S.W.2d 665, 671 (Tex. App.–Texarkana 1996, writ denied) (citing rule that a claim accrues when "facts come into existence").

at bar, the facts supporting Marathon's claim came into existence in January 2002, when the under-accrued EG taxes for December 2001 were due and were paid by Marathon.

Marathon also argues that Section 7.03 created a condition precedent requirement because it required Marathon to make a demand, and to await formal action by CMS, before filing suit.[51] The Court is unpersuaded. There is a presumption in Texas law against reading contractual language as creating such a requirement.[52] However, even if a condition precedent requirement did exist under Section 7.03, such a requirement would not toll the statute of limitations. Marathon waited approximately three years after the tax payment to make any demand to CMS. The Texas Supreme Court has held, in a non-indemnity context, that a plaintiff may not "delay the running of limitations indefinitely merely by not presenting its claim," because such unilateral delay is "inconsistent with Texas law governing statutes of

---

[51] Marathon claims that, "[u]nder the terms of Article VII," its claim for indemnity in the Boyd Letter is a "condition precedent to Defendant's duty to indemnify Marathon and is, therefore, a condition precedent to suing Defendant on that claim." Plaintiffs' Motion, at 11-12; *see* Plaintiffs' Response, at 15.

[52] *See Tubb*, 862 S.W.2d at 746 ("In the absence of such terms [that condition performance, such as 'if', 'provided that,' or 'on condition that'] and if the intent of the parties to create a condition cannot be gathered from the contract as a whole, the obligation to perform will be treated as a promise rather than a condition"); *Powers v. Powers*, 714 S.W.2d 384, 388 (Tex. App. – Corpus Christi 1986, no writ) ("The language of a contract will not be construed as a condition precedent if another reading of that language is possible").

limitations."[53] Moreover, nothing in Section 7.03 required Marathon to wait for CMS's response to its demand in the Boyd Letter, let alone formal denial by CMS, before filing suit. Even in cases in which formal notice is required before suit, such a notice requirement does not extend the statute of limitations.[54] Marathon cites no authority to support a contrary view[55] and the Court declines to extend the rule under Texas law.

Under Texas law, Marathon's claim for indemnification accrued in January 2002, when payment was due on the EG taxes for 2001 that were under-accrued by

---

[53] *Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (adjudicating statutory claim against a county for reimbursement of funds).

[54] *Moreno v. City of El Paso*, 71 S.W.3d 898, 902 (Tex. Ct. App.–El Paso 2002, writ denied) ("In those jurisdictions requiring the injured party to give notice of the claim within a specified time *but not **requiring** any delay after the notice before suit is brought*, the majority of courts have held that the notice requirement does not affect the running of the statute of limitations because it is merely a part of the remedy and not an essential part of the cause of action") (emphasis added). *Moreno*, decided just before the *Lubbock* decision was issued, involved a negligence claim against the City of El Paso. *Moreno* held that, even though the city's municipal code required notice of injury as a condition precedent to suit, the condition precedent requirement did not extend or toll the limitations provision.

[55] To the contrary, Marathon's cited cases note that, even when a plaintiff is clearly required to perform a condition precedent to suit, the plaintiff may not extend the statute of limitations by merely by delaying its performance of the condition precedent. *See Rolling Lands Investments, L.C. v. Northwest Airport Management, L.P.*, 111 S.W.3d 187, 195-96 (Tex. App.—Texarkana 2003, writ denied) ("when demand is an integral part of a cause of action, or demand is a condition precedent to the right to sue, the statute of limitations does not begin to run until demand has been made *unless the right to make a demand was waived or unreasonably delayed*") (emphasis added); *Stevens*, 929 S.W.2d at 671 ("[w]here demand is a condition precedent to a suit, the injured party may not, by failing to make demand, postpone the running of the statute until he decides to make a demand"). Moreover, neither of these cases holds that the limitations period does not begin to run until a demand is formally rejected.

CMS, and when Marathon made payment to the EG government.[56] Because this suit was filed on August 15, 2007, the claim is time-barred under Section 7.03 and Texas' four-year limitations period.[57]

---

[56] Marathon also argues that its claim for indemnification is timely because Section 7.03 must be read in harmony with Section 7.08.  Section 7.08 provides:

> Survival.  The covenants of the Parties contained in this Article VII shall survive the Closing and shall continue in full force and effect until all applicable statutes of limitations, including waivers and extensions, have expired with respect to the matters addressed therein, and if no statute of limitations exists, until such matters are finally settled.  Notwithstanding the foregoing, any such covenant as to which a bona fide claim relating thereto is asserted in writing (which states with specificity the basis therefor) during such survival period shall, with respect only to such claim, continue in force and effect beyond such survival period pending resolution of the claim.

SPA, § 7.08, at 33.  According to Marathon, Section 7.08 means that, because Marathon asserted a bona fide claim (*i.e.*, a demand to CMS) in writing, Marathon's claim can continue to resolution.  Plaintiff's Response, at 12-14.  Marathon also argues that, if the last sentence of Section 7.03 is a contractual limitations provision and requires filing a lawsuit before the limitations period expires, then Section 7.08 is rendered superfluous because there is no need to extend the covenant's survival period by asserting a claim in writing.  Plaintiffs' Reply, at 6.

However, as CMS argues, Sections 7.03 and 7.08 serve different purposes.  Section 7.03's last sentence pertains to the time when an indemnity *claim* must be brought so as not to be time-barred.  Section 7.08 addresses the length of time that the parties' Article VII *covenants* survive after the closing of the transaction.  By Section 7.08's first sentence, quoted above, a covenant terminates when "all applicable statutes of limitations . . . have expired."  This clause, if read literally, means the covenants expire even during the pendency of litigation.  Because this language could provide the covenantor with a defense to liability, Section 7.08's second sentence is a "savings" clause that extends the life of a *covenant* that relates to a claim asserted during the limitations period until the claim is resolved.  Section 7.08 does not extend the statute of limitations for *claims* applicable under Section 7.03.

[57] It appears that Marathon's claim also is barred under the five-year statute of limitations under EG law, cited by CMS.  However, because CMS has merely cited to EG law for the length of the EG limitations period, but provides no information or argument regarding the EG limitation period's application or calculation of accrual dates, the Court relies only on

(continued...)

## IV. CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that CMS's Motion for Summary Judgment on Withholding Claim [Doc. # 39] is **GRANTED**. It is further

**ORDERED** that Marathon's Second Motion for Partial Summary Judgment [Doc. # 42] is **DENIED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **15th** day of **December, 2008**.

_____
Nancy F. Atlas
United States District Judge

---

[57] (...continued)
Texas law.